## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

Mason Woolley )
434 N Pleasant Street )
Amherst, Massachusetts 01003 )
 )
                Plaintiff, )    Civil Action No:
 )
V. )    3:19-CV-30004-
University of Massachusetts )
181 President's Drive )
Amherst, Massachusetts; )
 )
 )
 )
 )
 )
 )
                Defendants, )

FILED IN CLERK'S OFFICE 2019 JAN 22 PM 1:43 U.S. DISTRICT COURT DISTRICT OF MASS.

### PARTIES

1. Plaintiff resides in Massachusetts in the county of Hampshire.

2. Defendant resides at 181 President's Drive Amherst, Massachusetts in the county of Hampshire.

### JURISDICTION

1. This Court has subject matter jurisdiction over the federal claims raised pursuant to 28 U.S.C. §§ 1331.
2. This Court has jurisdiction to issue injunctive, and other relief under 28 U.S.C. §§ 2201 and 2202.

## FACTS

1. Plaintiff & Student, Mason Woolley has diagnosed medical conditions, which result in a disability; he suffers impairments, which result in disability, and has been received special services because of these impairments since the age of 5.
2. In the fall of 2017 student re-enrolled at the University of Massachusetts Amherst after a voluntarily withdraw due to medical problems in 2013. At a later point, the University claimed the student was academically suspended although no notice was given to the student.
3. Student, Mason Woolley enrolled in in disability services to receive accommodations for his health ailments and disability; student provided a doctor's note to that effect.
4. Student enrolled in Creative Writing or English 354 with Instructor John Goodhue. Student, Mason Woolley faced discrimination and hostile behavior from the professor in a meeting in October 2017.

Goodhue scheduled a meeting with the student where he attempted to persuade the student, Mason to withdraw from the course and that it was in his 'best interest' to do so. The instructor told the student (falsely and before completion of the course) that he was going to fail and he would fail no matter what the student did or the grades he earned. Instructor also refused to acknowledge excused absences and said he would count them as zero. Instructor cast aspersions

on student's disability and doubted if it was 'real' or not despite being aware of disability from disability services.

Instructor falsely stated that the student missed three courses his entire grade would be lowered by 20 percent although the syllabus does not state this is the case for the entire grade, only for specific classes missed.

Instructor Goodhue's body language and tone during the interaction indicated he was angry and at times, he was shaking with anger; the instructor also approached the student extremely close during the encounter and was at several points' inches away from him.
Student was frightened by the encounter, concerned the instructor had acted in a discriminatory matter against him and did not feel safe to be alone in the company of the instructor again.

5. Student informed Disability Services of the incident and his concern regarding fairness of the professor, conerns he had been discriminated against and concerns his accommodations were adhered to university employee, Cynthia Wills whose position was consumer manager and role was to act as an advocate. Cynthia Wills ignored the student's concerns and took no actions. Student also informed Academic Dean Jackie Brousseau-Pereira who similarly ignored the student's concerns and took no actions. As result of the university's failure to take action, the student concerns and needs were not met and he withdrew the course.

6. After withdraw, the student contacted Department Chair of the English Department, Randall Knoper who apologized for the instructor's conduct and promised to implement a training program to train professors how to interact properly with disabled students. Although it did not appear any training program was implemented and student's future contact with Disability Services co-director Ben Ostiguy and Cynthia Wills regarding disability services and English department working on this program and he was ignored.

7. In the spring 2018 semester, student enrolled in Comparative Politics or PolySci 111 with Professor Timothy Pachirat. Student wanted to meet with Timothy Pachirat regarding his accommodations as he customarily did with all professors in order to establish the specifics of accommodations and extensions and so that only the professor is aware of his disability. Without the student's permission or necessity the teacher's assistants for this course and in other courses, TA's were informed of the student's disability.

Professor Pachirat initially refused to meet with the student and deferred the meeting to a TA, then Professor Pachirat stated he would contact Disability Services regarding a meeting ostensibly to schedule a meeting, Professor Pachirat than informed Disability Services he would not meet with the student.

8. Per this course, one of the student's accommodations was "may require additional time to complete assignments". Student in accordance with this accommodation and his rights as a disabled individual under the ADA, asked the professor for additional time for online quizzes and the professor refused without a reason, which would have been excusable. Professor stated that he preferred this arrangement for "pedagogical" reasons. Student informed his consumer manager and advocate; Cynthia Wills of the refusal of the professor to make an accommodation, Wills took no action to ensure accommodation and informed the student she agreed with the professor. In response to Professor Pachirat, the student informed the professor he would file a complaint to uphold his right if the professor did not provide the accommodation. After this, the professor reluctantly agreed and referred to the student's exercise of his rights as a "threat" and referred to the accommodation as "capacious".

9. After this incident and the prior incident with Instructor Goodhue, the student, Mason was concerned with the competence, reliability and helpfulness of his consumer manager, Cynthia and sought a new manager to be assigned to him. Student was concerned the consumer manager's actions precluded him from receiving the proper accommodations and support he needed and

when facing adverse action by faculty, the consumer manager failed to stand up for the student's rights and advocate on his behalf in consideration of his disability Therefore, student contacted Disability services in early March and requested a meeting with then co-director, Ben Ostiguy. His request for a change and meeting was ignored several weeks and when he finally spoke with Ben Ostiguy, he promised to consider changing the student's consumer manager but took no action.

10. In a meeting with Academic Dean, Jackie Brousseau-Pereira, student was discouraged from seeking accommodations and was told that he is not always entitled to an accommodation by the University.

11. In May the student, Mason was given notice of an 'academic dismissal' and the option to appeal it; within this email it stated per University's rules and regulations it requires that the academic dean make the decision and if it is unfavorable, the student may appeal it to the Committee on Admissions and Records. The Dean refused to follow the proper process and instead sent the decision to the Committee on Admission and Records. Furthermore, it is stated that academic dismissal can only occur if the prior semester the student's GPA was below a 2.0; the student's GPA was above a 2.0 and a 2.7 GPA for the semester.

12. Academic Dean, Pereira wrote a cover letter to the aforementioned committee, the official role and duty of the committee is to make a decision on academic merit and mitigating factors affecting a student's academic performance. Despite this being the case, the dean's cover letter largely included non-academic information including concern of the student's email correspondence with faculty and copy an email correspondence. It also included the recommendation that he be withdrawn because of the undergraduate's advisors personal opinion and feelings towards the student. The cover letter also discussed the student's social interactions and social skills and referred to them in a negative and disparaging manner as "hostile".

In a prior meeting with the Dean, student was asked what his disability was and the Dean expressed this would be kept in confidence and she only asked out of "concern". The student informed the Dean of one of his disabilities and after that point, the Dean asked the student what the name of his doctor's office was, the doctor and where it was located.

The dean relayed this information to the Committee without the student's permission and mischaracterized his health problems as resulting in "fears" that "may not" seem "rational". At no point did the student state to the Dean his disability or otherwise his thinking or actions were not rational.

The committee did not acknowledge all mitigating circumstances and the student were not allowed to attend the hearing.

13. The student was informed on July 12 2018 his appeal was denied, no reason or explanation was given. Student repeatedly sought an explanation and no official explanation was given by the university register's office. On July 27th 2018 the student asked the university for records and minutes of the committee meeting regarding his dismissal and he was initially promised it would be given to him and within '45 days' the FEPRA deadline. These records were never provided to the student and subsequent requests were ignored.

14. During the summer, student, Mason met with then co-director Ben Ostiguy and Academic Dean, Jackie Brousseau-Pereira regarding his dismissal. Co-director, Ben Ostiguy informed the student during his conversation that faculty and staff perceived the student as having poor social skills and often misinterpreted them. Student asked Ben if he thought this effected the actions and treatment towards the student and he said it was likely yes and that he had a 'history' of this problem and this his behavior likely caused resentment which was later take out on him. Student's social skills and interactions are effected by his disability; however it was not until the academic dismissal that he was aware his social interactions results in adverse actions and behaviors against the student.

15. In the meeting with Dean Pereira, the student asked why it being his second semester back and earning decent grades, C's and B's, was he being withdrawn? He stated that it did not make any sense. Dean Pereira said to the student "You know Mason I am always honest with you .... Can I be honest with you now?" Dean Pereira then informed the student that the actual reason for withdraw was his social skills and discontentment over emails he had sent to faculty and staff.

16. Student continued to reside in an apartment on campus with which he had a signed contract to reside in until 8/31/2018. On July 31, 2018 weeks after the official academic withdraw and days after he informed the college, he had filled a HUD complaint for refusal to provide a housing accommodation, he was given a two-day notice to vacate the apartment. Not only was this indecent it did not adhere to Massachusetts housing law. Student informed academic dean, dean of students and resident life that because of his disability and contract he sought an extension and that he be allowed to move out on 8/31/2018. This was refused; student's back disorder and disability made it very hard for the student to figure out how to attain housing on such short-notice.
Student was informed by Resident Life if he did not move out within 2 days, than umass police would become involved. Student feeling he had no choice and fearful for his safety, did move out two days later and on that day he was approached by an armed undercover police officer, Jeffrey Silvia who introduced himself and told him that he was being watched. The student did not commit a crime nor was he accused of one and there was no legitimate basis for the officer's presence.
As result of the abrupt loss of his apartment, the student became homeless.

17. Student attended two job-recruiting events with Epsilon Marketing and TJX Companies, the latter that promised a starting salary 55k a year or higher; however this was contingent upon student's degree.

18. Student's lower grades than he otherwise would have earned given the university's treatment and failure to accommodate, student's aggravated back pain as result of being homeless that has

resulted in several hospitalizations, homelessness and mental anguish has effectively precluded the student from transferring and completing his degree at another university.

## COUNTS

### 1. *Violation of Section 504 of the Rehabilitation Act*

Section 504 of the Rehabilitation Act requires programs or activities that receive federal financial assistance to refrain from discriminating against individuals on the basis of disability. The University of Massachusetts receives federal grants and other forms of federal financial assistance.

Section 504 states"
No otherwise qualified individuals with handicaps in the United
States, as defined in section 7(8) of this title, shall, solely by reason of
his/her handicap, be excluded from the participation in, be denied the benefits
of, or be subjected to discrimination under any program or activity receiving
Federal financial assistance "

A. The defendant, University of Massachusetts and its employees discriminated against plaintiff, Mason Woolley as stated below:

   1. University employee, Instructor Goodhue discriminated against the student, Mason both when he treated the student in a hostile way and encouraging the student to withdraw by telling him he was guaranteed to fail and falsely citing his syllabus.

   2. University of Massachusetts Disability Services failed to remedy or protect the student from discrimination by Insructor Goodhue once it became aware.

3. Academic dean Jackie Brousseau-Pereira failed to remedy or protect the student from discrimination by Instructor Goodhue once she was aware. As result of discrimination and mistreatment, the student withdrew from the course.

4. English Department Chair admitted and apologized for the discrimination, however when the time came to implement a training program for instructors, no action was taken.

5. Professor Pachirat discriminated against the student by refusing to extend an accommodation. Professor put his preferences first despite disadvantage and harm it rendered the student by denying him the full opportunity to perform in the class to his abilities.

6. Cynthia Wills of University Disability Services and consumer manager of the student agreed with the professor and therefore tacitly approved of his discrimination or took no action despite being aware of it.

7. In a meeting with Academic Dean, Jackie Brousseau-Pereira and in reference she made to Timothy Pachirat, student was discriminated by the dean when she discouraged the student from seeking accommodations and telling him, he is not always entitled to accommodations.

8. Academic Dean Pereira discriminated against the student in the recommendation sent to the committee on admissions and records.
The dean shared the student's medical information in an adverse manner to the committee that was making the decision on his academic appeal.
Dean falsely implied the student's thoughts and behavior were irrational and falsely conveyed the student's comments as supporting such. Furthermore, the Dean acted discriminately by conveying his disabilities as "mental health struggles" and claimed they were not actually the student's "health concerns" or what would otherwise be covered under student's accommodations. Student's health condition and disorder are the basis of his disability.

B. The defendant, University of Massachusetts and its employees excluded from participation and/or denied benefits against plaintiff, Mason Woolley as stated below:

1. Instructor Goodhue sought to deny the student, Mason participation in his course by encouraging withdraw and in tantamount with aspersions cast on the student's disability.
2. University of Massachusetts Disability Services denied the benefits of services, which includes support of the student and protection against discrimination by ignoring the reporting of discrimination and misconduct by Instructor Goodhue.
3. Academic Dean's office denied the benefits of their office, which may have extended to intervention on the student's behalf by ignoring the student is reporting of discrimination and misconduct by Instructor Goodhue.
4. Professor Pachirat excluded the student by refusing to meet with him discussing accommodation and therefore preventing a full and total disclose by student of his needs so that he would be able to perform to the best of his ability.
5. Student was denied the benefits of proper support and services when his request for a new consumer manager was ignored.
6. Student was excluded from participation and denied the benefits of a fair, accurate and transparent hearing on his academic appeal by not being allowed to attend and speak on his behalf of the committee for admissions on the records. The student's disabilities and the impact on his life and academic life, something he can only fully know and communicate would have been particularly relevant to the committee to ensure the full benefit of a fair and proper decision.
7. University Disability Services co-director Ben Ostiguy informed the student he was aware of mistreatment on the basis of the student's social interactions. Ben Ostiguy was

aware of the student's academic dismissal appeal and despite the student's communicated concerns the withdraw was improper; Ben Ostiguy took no apparent action to convey to the committee, registrar's office or an administrator of the school the student has been treated differently and adversely because of his social interactions. Ben Ostiguy excluded the student by his inaction and benefits decision makers in his academic dismissal may have conferred in a favorable decision upon being made aware and informed.

8. Student was denied the benefits of an accommodation he requested for his apartment by University Residence Life when it refused to provide one stating it was "unable" to do so.

9. As result of Defendant University of Massachusetts's actions and inactions, Mason Woolley suffered and continues to suffer emotional suffering and psychological injury.

10. As a result of Defendant University of Massachusetts's violations of The Rehabilitation Act, plantiff is entitled to compensatory damages, consequential damages, and equitable relief.

2. *Violation of American with Disabilities Act*

Title II of the ADA requires that public entities refrain from discriminating against individuals on the basis of disability. 42 U.S.C. § 12132. The regulations implementing Title II of the ADA require that public entities avoid unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3). Further, the regulations require that public entities provide reasonable modifications to their policies, practices, or procedures in order to avoid discrimination on the basis of disability.
28 C.F.R. § 35.130(b)(7).

To provide comprehension of the Act in relation to plaintiff's suit the following is cited: Under Findings & Purposes of the American with Disability Acts congress declared: "The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals; and the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.."

The University of Massachusetts and its employees discriminated against plaintiff, Mason Woolley as stated below:

1. The plantiff re-alleges Count 1:A, paragraphs 1-8 and incorporates them herein by reference.
2. Instructor John Goodhue failed to modify his policies and behavior towards the student, Mason to ensure he would have equal access to the class and accommodations he needed to complete it. Disability Services after becoming aware failed to instruct Instructor Goodhue to change his policies and behavior towards the student.
2. Disability Services and English Department took no action to implement a training program for professors despite a change in policy or programs being consistent with the ADA.
3. Professor Timothy Pachirat refused to provide an accommodation in a manner which is consistent with the American with Disabilities Act, which only allows exemption under undue hardship. Pachirat's reason for refusal as explicitly communicated was for pedagogical reasons. University Disability Services when becoming aware of this took no action and did not instruct the professor to respect the student's accommodation and act consistently with the law; alas, they agreed with it.
4. Professor Pachirat referred to student's accommodation disparagingly as "capacious" and called the student's exercise of his rights under the American with Disabilities Act as a "threat".

5. University Disability Services discriminated against the student when it failed to change his consumer manager therefore tolerating her past actions and failed to change its policies on consumer managers as necessitated.

6. Given the totality of the discrimination and failure of the defendant to respect the student's rights it is likely the student was discriminated against when the University began the academic dismissal process despite it clearly not being justified under its own policies. Student earned a 2.7 GPA the prior semester. University of Massachusetts Amherst policy states "A dismissal results when you have had any previous semester on Academic Suspension, and your cumulative GPA again falls below 2.000. "

7. Co-Director of University Disability Services, Ben Ostiguy informed the student he had been misunderstood and treated differently because of his social interactions(which stemmed from his disability). Ostiguy failed to accommodate the student by informing the University and relevant offices and administrators post facto of the academic dismissal process of the negative impact on the student's career. The University failed to modify its procedure in relation thereof.

8. Academic Dean, Jackie Brousseau-Pereira informed the student the reason for his dismissal was because of his social interaction and email correspondence with faculty and staff and therefore dismissal was not as ostensibly justified because of his GPA. This is supported by the cover letter sent to the committee which is largely non-academic in nature in listing the reasons to affirmy or deny the academic dismissal. Among the reasons supporting the Dean's revelation in the cover letter:
Reference and attachment of correspondence between student, Mason and Professor, Andrea Malaguti and reference to the student's interactions as "rude." Reference to and copy of correspondence between student and political science department Jane Fountain and referring to it as "drawn out" and "complicated". Most disconcerting is an explicit

reference for reasons of dislike of student's interaction by undergraduate advisor, Adrian Grace that she would "like" to see the student dismissed.

11. The university discriminated against the student as outlined in above paragraph 8 because it adversely acted against the student on the basis of social difficulties and poor social skills stemming from his disability. Furthermore, once the appropriate university staff was made aware no action was taken to modify university procedures and policies to ensure an equal outcome consistent with student's disability.

12. On July 31,2018 the student was discriminated against when he given two days to move out of his apartment, student asked Academic Dean Jackie Brousseau-Pereira, Resident Life and Associate Chancellor Susan Pearson that he be allowed to live in his apartment until the agreed upon date of 8/31/2018 because of his disability and the difficulty posed by abruptly moving out. The impact of loss of housing on Student's disability was ignored and his request denied. Student as result became homeless and suffered aggravation of his back disorder, which resulted in increased physical pain and hospitalization.

13. As result of Defendant University of Massachusetts's actions and inactions, Mason Woolley suffered and continues to suffer emotional suffering and psychological injury.

14. As a result of Defendant University of Massachusetts's violations of Title II of the ADA, plantiff is entitled to compensatory damages, consequential damages, and equitable relief.

**WHEREFORE**, Plaintiff respectfully asks the court to grant:

1. Award plaintiff compensatory damages for emotional distress, and mental anguish in the amount of 200,000 dollars from the Defendant.
2. Award Plantiff compensatory damages for loss of future income and economic harm in the amount of 931, 240 dollars.
3. Award plaintiff consquential damages for making him homeless, aggravation of his medical conditions and back disorder in the amount of 150,000 dollars from the Defendant
4. Issue a preliminary injunction enjoining defendant to allow course registration and enrollment and upon conclusion of trial, a permanent injunction.
5. Waive security bond for preliminary injunction in relation to Federal Rules of Civil Procedure 65 (c).
6. Award such relief as the court deems appropriate.

Respectfully submitted,

*[signature]*

Mason Woolley
434 North Pleasant Street
Amherst, Massachusetts
masonlawemail@gmail.com
828-237-3605
Pro Se